UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

ANTHONY MINEO,

Plaintiff,

-against-

TOWN OF HEMPSTEAD, JOHN ROTTKAMP, individually and in his capacity as Commissioner of The Town of Hempstead Building Department, JOHN NOVELLO, individually and in his capacity as the Deputy Commissioner of the Town of Hempstead Building Department, RAYMOND SCHWARZ, individually and in his capacity as Supervisor of Inspection Services for the Town of Hempstead, ROY GUNTHER, individually and in his capacity as Chief Code Enforcement Officer for the Town of Hempstead,

Defendants.
--------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 13 2022 ★
LONG ISLAND OFFICE

COMPLAINT
Index No.:

CV 22 4092

AZRACK, J.

WICKS, M.J.

Plaintiff, ANTHONY MINEO, by and through his attorney Law Offices of Gerald V. Dandeneau, P.C., complains against the Defendants, TOWN OF HEMPSTEAD ("TOH"), and JOHN ROTTKAMP, JOHN NOVELLO, RAYMOND SCHWARZ and ROY GUNTHER, individually and in their official capacities (collectively "Defendants"), and alleges upon his own knowledge and information and belief as follows:

### INTRODUCTION

1. Plaintiff brings this action seeking monetary damages and declaratory and

injunctive relief based upon Defendants' violations of the anti-retaliation provisions of the Family and Medical Leave Act ("FMLA"), Section 1983 of Title 42 of the United States Code, and the Fair Labor Standards Act ("FLSA").

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is based on 42 U.S.C. §12101 *et seq.* and 28 U.S.C. §§ 1331.

3. This Court has jurisdiction over all state law claims brought in this action pursuant to 28 U.5.C. §§ 1367 and 1446.

4. Venue is appropriately in this Court pursuant to 28 U.S.C. §1391, as all actions comprising claims for relief occurred in this judicial district and one or more defendants residewithin this judicial district.

## THE PARTIES

5. At all times hereinafter mentioned, Plaintiff ANTHONY MINEO was and still is a resident of Nassau County, State of New York.

6. At all relevant times to the Complaint, Plaintiff ANTHONY MINEO is and was a "person" and an "employee" of the TOH entitled to the protections afforded by §1983.

7. Defendant TOH is a municipality of Nassau County, duly organized and existing

under the laws of the State of New York, with its principal place of business located at One Washington Street, Hempstead, New York, and which employed and employs more than 15 employees and is therefore an "employer" within the meaning of §1983.

8. At all times hereinafter mentioned, defendant JOHN ROTTKAMP was a New York citizen employed by the TOH as the Commissioner of the Building Department and at all relevant times was and is Plaintiff's highest level supervisor, and has the power to make binding decisions for the TOH.

9. At all times hereinafter mentioned, defendant JOHN NOVELLO was a New York citizen and was and is employed by the TOH as a Deputy Commissioner of the Building Department and was and is a supervisor of Plaintiff, and has the power to make binding decisions for the TOH.

10. At all times hereinafter mentioned, defendant RAY SCHWARZ was a New York citizen and was and is employed by the TOH as Supervisor of Inspection Services and was and is Plaintiffs supervisor, and has the power to make binding decisions for the TOH.

11. At all times hereinafter mentioned, defendant ROY GUNTHER was a New York citizen and was and is employed by the TOH as Chief Code Enforcement Officer and was and is Plaintiffs direct supervisor

## STATEMENT OF FACTS

12. On February 23, 2011, Plaintiff became a full-time employee of the TOH as a Special Investigator.

13. On October 2, 2014, Plaintiff became the Chief Investigator for the TOH Town Attorney's Office.

14. On August 3, 2016, Plaintiff became a TOH Code Enforcement Officer, subject to a one year probationary period. Plaintiff is currently a full-time Code Enforcement Officer.

15. On September 28, 2017, Plaintiff applied for intermittent FMLA leave with the TOH due to complications with his wife's pregnancy, which was granted by the TOH.

16. Plaintiff first went out on FMLA leave on October 10, 2017, which ended October 10, 2018.

17. On January 22, 2019, Plaintiff again applied for intermittent FMLA leave with the TOH due to complication with his wife's pregnancy, which was granted by the TOH.

18. Plaintiff's second FMLA term began on January 22, 2019 and will end on January 21, 2020.

19. That the conduct of the Defendants as complained herein constitutes a pattern of illegal and discriminatory actions aimed at harming the Plaintiff and his family solely in response to the Plaintiff's conduct as a Compliance Officer with the TOH.

20. The Defendants' conduct is wanton, malicious and aimed with purposefully depriving the Plaintiff of his ability to perform his job functions with constant disciplinary actions being maintained against his with the hopes that the Plaintiff would relinquish his duties and functions as a Compliance Officer which pattern of discriminatory activity continues to date and as such constitutes an on-going retaliation against the Plaintiff for which

the Plaintiff has had no legal recourse.

21. That the Plaintiff did not avail himself of the procedural rights under the Collective Bargaining Agreement between the TOH and the labor organization representing the Plaintiff and other similarly situated TOH employees due to the fact that the same would be a fruitless exercise with not reasonable expectation of success due to the fact that the labor organization representing the Plaintiff is merely an instrument of the TOH and would "rubber stamp" all of the TOH's decisions as they apply to the Plain tiff's grievances should he bring the same.

## WORKPLACE VIOLENCE INCIDENTS

22. On January 24, 2017, while conducting an inspection at Two Meadow Lane Levittown, Plaintiff had an altercation with Mike Maters, who is a resident of the hamlet of Levittown. Plaintiff submitted a workplace violence report to the TOH due to unsafe work conditions.

23. On March 9, 2017, while conducting an inspection at 2903 North Jerusalem Road in East Meadow, Plaintiff had an altercation with Ed Park, an employee of CIPCO Board Ups, a contractor with the TOH. Plaintiff submitted a workplace violence report to the TOH due to unsafe work conditions.

24. On May 2, 2017, while conducting an inspection at Two Meadow Lane, Levittown, New York, Plaintiff had an altercation with Mike Maters. Plaintiff filed a criminal complaint with the Nassau County District Attorney's Office against Mr. Maters and a restraining order was issued on May 22, 2017.

25. On May 9, 2017, while at a house fire at 81 Hickory Lane in Levittown, New York Plaintiff had an altercation with Ed Park.

26. On June 15, 2017, while conducting an inspection at Two Play Lane, Levittown, New York, Plaintiff had an altercation with a Town of Hempstead Highway employee Brian Buttafucco, who Plaintiff formally investigated while he was Chief Investigator for the TOHTown Attorney's Office. Plaintiff submitted a workplace violence report to the TOH due tounsafe work conditions.

27. On September 15, 2017, while conducting an inspection at 3853 Hahn Avenue, Bethpage, New York, Plaintiff was placed in an unsafe work situation. While on scene, Plaintiff was threatened by occupants of a basement apartment who were living there illegally and who were subject to being evacuated due to significant life safety concerns. While on scene, Plaintiff found guns inside the house, including long rifles and shotguns, multiple narcotic pill bottles, as well as drug paraphernalia.

28. On October 2, 2017, Plaintiff witnessed an incident of workplace violence where a fellow CEO had a loud verbal altercation while in the office. After witnessing it, plaintiff made astatement to TOH Investigator Costales on October 3, 2017.

## REPORT OF WORKPLACE SAFETY ISSUES

29. On August 29, 2017, Plaintiff sent a memo to his immediate Supervisors, Gunther and Schwarz, as well as President of the CSEA Local 880 Charles Selitto regarding the numerous safety issues pertaining to the Code Enforcement Officers' "midnight tour", which had no backup and no direct method of communication with the TOH. No one ever responded to

Plaintiff. The Building Department is one of the only departments without radio back up, and the TOH administration expects their employees to utilize personal cell phones in order to communicate and for any/all emergency situations. There are numerous cell phone coverage "dead spots" within the various hamlets in the Town of Hempstead. Vehicle breakdowns and/or assigned vehicle issues further pose safety concerns for a Code Enforcement Officer working the late shift.

30. On September 6, 2017, Plaintiff sent a memo to Charles Sellitto, Union President for CSEA Local 880, and to the Building Department Commissioners raising safety issues concerning the lack of safety gear, Hazmat boots, and personal protective equipment. Upon information and belief, some Code Enforcement Officers were issued bulletproof and/or stab proof vests. Plaintiff was not offered the opportunity to receive such items.

31. On September 28, 2017, Plaintiff sent an email to his direct supervisors, Ray Schwarz and Roy Gunther, regarding Procedural Guidelines for Unsafe Structures which pertained to the myriad of problems stemming from the Workplace Violence incident on September 15, 2017 at 3853 Hahn Avenue, Bethpage, New York. Plaintiff did not receive a response.

## DENIAL OF OVERTIME

32. On September 28, 2017, Plaintiff was denied requested overtime for one hour of overtime while working at 3853 Hahn Avenue Bethpage, New York on September 15, 2017. On Commissioner Rottkamp stated "Request for overtime is denied. Employees are paid for lunch.Employees must request to work overtime from his/her supervisor and must be pre-

approved. You did not notify your supervisor or obtain permission to work overtime. Thus, your request isdenied".

33.     On October 25, 2017, Plaintiff filed a grievance with the CSEA Local 880 regarding a violation of overtime terms in the Collective Bargaining Agreement between the CSEA Local 880and the TOH dated November 15, 2018. Claimant was not paid a uniform allowance. The Grievance Board issued a decision on the grievance on December 21, 2017.

34.     Throughout the years 2020 through 2021, the Plaintiff has been discriminated in his position as a Compliance Officer with the TOH in his disparate treatment of the Plaintiff in the receipt of his benefits and working conditions versus those right, privileges and working condition of other TOH Compliance Officers, which were the result of the Plaintiff's good faith attempts to perform his job functions as required.

## ADVERSE EMPLOYMENT ACTIONS/HARRASSMENT

35. On March 21, 2018, Defendant John Novello denied Plaintiff free training offered by New York State for Code Enforcement Officers. Plaintiff had been specifically asked to sign up for the training by his direct supervisor, Defendant Gunther.

36. On May 5, 2018, Plaintiff requested a formal transfer out of the TOH Building Department. To date he has received no response to this request.

37. On August 8, 2018, Defendant John Novello permitted more junior TOH Building Department employees the ability to attend classes which were not germane to their job duties and responsibilities but denied Plaintiff the opportunity to attend classes germane to

his job duties. For example, TOH employees Ezra Brown and Andrew Manzo were permitted to attend a training despite their job duties not requiring attendance. Mr. Manzo formerly worked for Defendant Novello in the private sector and Mr. Brown's father is a Board of Trustee for Cedarhurst Village, where Novello serves on the Board of Zoning Appeals. Novello authorized the TOH to cover the cost for the aforementioned employees to obtain the training despite it not being relevant to their job duties and/or responsibilities.

38. On October 10, 2018, Plaintiff was given a written reprimand for misconduct and insubordination for speaking to then Acting Supervisor CEO Rick West in a disrespectful tone after CEO West approached Plaintiff in a threatening manner and ordered Plaintiff to complete a fire report that he had never been asked or required to do in the past, prior to the start of his shift, while not on TOH time.

39. Defendant Gunther is a Nassau County SPCA Detective. Defendant Gunther directed Plaintiff to attempt to catch feral cats at a Franklin Square home in 2017 to assist Gunther with his Nassau County SPCA responsibilities while Plaintiff was on duty for the TOH. Defendant Gunther questioned the frequency and timed the duration of the Plaintiff's bathroom breaks on a regular basis during the month of December 2018, constantly requesting explanations for the duration of time away from Plaintiff's desk.

40. Upon information and belief, Defendant Novello requested that Defendant Gunther question Plaintiff about these breaks because Novello was trying to prove that Plaintiff was filing permits for his personal residence on TOH time.

41. Plaintiff has been required by Novello and Gunther to utilize vacation and/or

personal days to attend ancillary trainings which are germane to his position as a Code Enforcement Officer when other similarly situated employees, including Doug Groth, have not been required to use vacation and/or personal days for certification and recertification classes.

## INCIDENTS RELATING TO PLAINTIFF'S PERSONAL RESIDENCE

42. On November 15, 2018, Plaintiff closed on his house at 2992 Shore Road in Bellmore, New York and the deed was recorded in Nassau County on November 28, 2018.

43. On November 29, 2018, TOH Plumbing Inspector Carl Kolansky trespassed on Plaintiff's property at 2992 Shore Road, Bellmore, New York and conducted an inspection without plaintiff's express permission. Kolansky conducted this inspection despite there being no complaint lodged in the TOH's Complaint Management System for Plaintiff's property. Building Department inspectors do not go out on assignments unless a complaint has first beenentered into the system. In addition, Kolansky did not enter notes about the inspection into the Complaint Management System until December 5, 2018 which is against TOH policy. The TOH requires inspectors to enter notes via laptop while they are in the field.

44. December 26, 2018, Plaintiff and/or his wife Sarah Mineo filed a criminal complaint against Kolansky with the Nassau County District Attorney's Office for trespass and inspecting without permission.

45. On November 30, 2018, Defendant Schwarz and Code Enforcement Officer Jon

Lipinsky issued a Stop Work Order and two criminal appearance tickets at Plaintiff's home when no work was being performed. No complaint was entered into the Complaint Management System until the day after the inspection and Schwarz and Lipinsky did not enter their field notes into the Complaint Management System until December 5, 2018.

46. Plaintiff has tried to meet with Defendant Rottkamp to discuss the issue with Kolansky and the stop work orders but Rottkamp has refused to speak with Plaintiff.

47. On January 3, 2019, Plaintiff received a five day suspension from work by DeputyCommissioner John Novello for removing the Stop Work Order from his door.

48. On January 3, 2019, 2018, Plaintiff was suspended for one day for accessing information on his personal residence using a TOH computer.

49. On January 3, 2019, Plaintiff was suspended by Defendant Novello for eleven (11) days in total and was issued two written reprimands.

50. On January 4, 2019, Plaintiff's hot water heater in his residence failed. Plaintiff contacted Defendant Gunther to advise of the situation. Plaintiff was told by Defendant Gunther that he could not make repairs until he applied for a permit, and he was told by Defendant Gunther that he needed a letter from a licensed plumber confirming that the hot water heater failed, which is not standard operating procedure. TOH refused to permit repairs due to the Stop Work Order. As a result of the TOH delays, Plaintiff and his family were without hot water for seven (7) days.

## DISCLOSURE OF PLAINTIFF'S PRIVATE MEDICAL RECORDS CONTAINED IN HIS FMLA APPLICATION

51. On September 14, 2018, Defendant Ray Schwarz approached Plaintiff and expressed condolences about Plaintiff's wife's health issues following the birth of Plaintiff's daughter. Schwarz revealed that he learned about the medical issues from his wife, Joan Schwarz, who is the TOH personnel clerk responsible for intake, processing and administration of FMLA paperwork.

52. At the time that Plaintiff applied for intermittent FMLA leave in 2017, he advised Joan Schwarz that he did not want anyone to know why he was filing for leave. She told Plaintiff that the application would only be reviewed by her and Commissioner Rottkamp.

53. Plaintiff filed a Complaint with the TOH concerning the release of his private medical records.

54. Plaintiff filed a Complaint with the Office of Civil Rights ("OCR") asserting a HIPAA violation for breach of confidentiality with respect to his medical records and FMLA application.

55. On September 28, 2018, Plaintiff learned that his OCR Complaint to the TOH was forwarded to the Town Attorney's Office without being properly marked personal and confidential and that the complaint with corresponding medical information was logged and processed by an intake clerk

56. The information contained in the OCR Complaint was reviewed by the intake clerk.

## COUNT I - RETALIATION IN VIOLATION OF FLSA AS AGAINST DEFENDANTS TOH, ROTTKAMP AND NOVELLO

57. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 53 of the Complaint as if fully restated herein.

58. The FLSA requires employers to pay overtime pay to non-exempt employees who work over 40 hours during any work week at a rate not less than time and one-half the employee's regular rate of pay.

59. Plaintiff is a non-exempt employee of the TOH.

60. Between January 2017 and September 15, 2017, Plaintiff was assaulted and subjected to workplace violence at various inspection sites. Plaintiff engaged in protected activity when he filed workplace violence reports with the TOH to report unsafe work conditions as a result of these incidents. At no time was Plaintiff ever contacted by a TOH employee to address the workplace violence reports.

61. On August 29, 2017 and on September 9, 2017, Plaintiff engaged in protected activity when he reported safety concerns to the TOH Building Department Commissioners and others.

62. On September 25, 2017, Defendant Rottkamp denied Plaintiff's request for overtime for work he completed at 3853 Hahn Avenue, Bethpage, New York.

63. Defendants denied Plaintiff the requested overtime in retaliation for reporting workplace violence and workplace safety concerns.

64. Plaintiff was given no reasonable explanation for the denial of one hour of overtime.

65. As a direct and proximate result of Defendants' retaliatory actions, Plaintiff sufferedand will continue to suffer emotional distress, embarrassment, mental anguish, lost earnings and other employment benefits.

66. Defendants acted with malice and Plaintiff therefore entitled to punitive damages.

## COUNT II - RETALIATION IN VIOLATION OF THE FMLA AND§ 1983 AS AGAINST ALL DEFENDANTS

67. Plaintiff incorporates by reference the allegations contained in paragraphs 1 Through 63 of the Complaint as if fully restated herein.

68. The FMLA entitles employees to take reasonable leave for the care of a child, spouse or parent who has a serious health condition. 29 U.S.C. §2601(b)(2).

69. At all times material hereto, Defendant TOH was a covered employer as defined by the FMLA and applicable federal regulations. 29 C.F.R. §825.104.

70. Defendant TOH granted Plaintiff intermittent leave under the FMLA effectiveOctober 10, 2017.

71. Due to the intermittent nature of Plaintiff's leave, he has taken several leavesbetween October 2017 and the date of the filing of this Complaint.

72. Soon after taking the FMLA initial intermittent leave and continuing

thereafter, Plaintiff began to be treated differently and more harshly by his supervisors.

73. Plaintiff was denied trainings, denied a transfer, directed to perform menial tasks outside the scope of his employment as a Code Enforcement Officer, was repeatedly questioned by his supervisor about taking bathroom breaks while at work, and was disciplined for actions for which he had not previously been disciplined or should not have been disciplined.

74. After Plaintiff closed on his home in November 2018, the retaliatory conductescalated. Plaintiff's TOH co-workers trespassed on his property and conducted an unwarranted inspection and issued criminal violations, tickets and a Stop Work Order.

75. Plaintiff was given an eleven (11) day suspension from work for removing the StopWork Order sticker from his front door.

76. Plaintiff was and continues to be treated treated differently and more harshly than his co-workers who have not applied for and been granted FMLA leave and who have not voiced concerns with the TOH Building Department over the nature of investigations performed in the course of the Plaintiff's position as a Compliance Officer.

77. As a result of Defendants' retaliatory and unlawful actions, Plaintiff suffered direct and proximate emotional and economic damages and is entitled to recover as such pursuant to 29 U.S.C. §2617.

### III - FMLA INTERFERENCE BASED ON THE TOH'S RELEASE OF PLAINTIFF'S PROTECTED MEDICAL INFORMATION

78. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 74 of the Complaint as if fully restated herein.

79. The FMLA prohibits the dissemination by an employer of an employee's private medical information and requires an employer to keep medical records of employees and their family members confidential and separate from the employee's personnel file.

80. Plaintiff submitted private medical information with his application for FMLA leave in September 2017.

81. In September 2018, Defendant Ray Schwarz admitted to Plaintiff that he learned about Plaintiff's wife's medical condition and the basis for Plaintiff taking FMLA leave through Schwarz's wife, the TOH personnel clerk responsible for FMLA application intake and administration.

82. Defendant Schwarz publicized to other TOH employees information about the condition of Plaintiff's wife which he obtained through the improper release of Plaintiff's private medical information.

83. The TOH violated Plaintiff's right to keep medical information private and therefore interfered with Plaintiff's rights under the FMLA.

84. Plaintiff demands a jury trial of all issues.

85. Plaintiff suffered embarrassment, emotional distress, mental anguish and

humiliation as a direct and proximate result of the TOH's violation of Plaintiffs FMLA rights. **WHEREFORE,** Plaintiff respectfully requests judgement against Defendants in an amount as yet to be determined as follows:

    a) unpaid compensation;

    b) compensatory damages;

    c) emotional distress damages;

    d) punitive damages;

    e) liquidated damages;

    f) attorney's fees;

    g) accrued interest; and

    h) expungement of any disciplinary measures entered into Plaintiff's personnel file, andany other equitable relief that may be deemed appropriate.

Yours,

Gerald V. Dandeneau, P.C.
Attorneys for the Plaintiff
425 Broad Hollow Road
Suite 210
Melville, New York 11747