UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY MINEO,

                Plaintiff,

             -against-

TOWN OF HEMPSTEAD *et al.*,

                Defendants.
-----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

22-CV-04092 (JMA) (JMW)

**A P P E A R A N C E S:**

Gerald V. Dandeneau, Esq.
**Dandeneau & Lott**
425 Broadhollow Road
Melville, NY 11747
*Attorney for Plaintiff*

Deanna Darlene Panico, Esq.
**Bee Ready Fishbein Hatter & Donovan, LLP**
170 Old Country Road, Suite 200
Mineola, NY 11501
*Attorney for Defendants*

**WICKS,** Magistrate Judge:

      On July 13, 2022, Plaintiff, Anthony Mineo commenced this action against Defendants

Town of Hempstead ("Town"), John Rottkamp, individually and in his capacity as

Commissioner of the Town's Building Department, John Novello, individually and in his

capacity as the Deputy Commissioner of the Town's Building Department, Raymond Schwarz,

individually and in his capacity as Supervisor of Inspection Services for the Town, and Roy

Gunther, individually and in his capacity as Chief Code Enforcement Officer for the Town.

Plaintiff alleges violations of the Family and Medical Leave Act ("FMLA"), 42 U.S.C. § 1983

and the Fair Labor Standards Act ("FLSA"), for failure to pay for overtime, retaliation for reporting workplace violence and safety concerns and taking FMLA intermittent leave, and prohibited dissemination of his medical information.  (ECF No. 1.)  Before the Court on referral from the Hon. Joan M. Azrack is (1) Plaintiff's motion to amend (ECF No. 21)—which includes eliminating his FLSA claim, supplementing facts surrounding his § 1983 claim, and adding a continuing violation and false arrest claim pursuant to § 1983; and (2) Defendants' motion to dismiss (ECF No. 22).  For the reasons that follow, the undersigned respectfully recommends denying Plaintiff's motion for leave to file an amended complaint and granting Defendants' motion to dismiss the operative complaint, with a denial of Defendants' request for attorney's fees under § 1988.

## FACTUAL BACKGROUND

Plaintiff was initially employed with the Town as a Special Investigator, then Chief Investigator, and finally a Code Enforcement Officer.  (ECF No. 1 ¶¶ 12-14.)  He went out on FMLA leave for one year and later returned to work in October 2018.  (*Id*. ¶¶ 15-16.)  He then went on FMLA a second time from January 2019 to January 2020.  (*Id*. ¶ 18.)

Plaintiff alleges that he has received retaliatory treatment as a result of the following occurrences:

- On January 24, 2017, Plaintiff got into an altercation with a resident of Levittown, Mike Maters, and then submitted a workplace violence report to the Town;

- On March 9, 2017, Plaintiff got into another altercation with a Town contractor named Ed Park, and again submitted a workplace violence report to the Town;

- On May 2, 2017, Plaintiff got into a second altercation with Maters and then filed a criminal complaint with the Nassau County District Attorney's Office and received a restraining order against Maters;

- On May 9, 2017, Plaintiff got into yet another altercation with Park;

- On June 15, 2017, Plaintiff got into an altercation with a Town Highway employee and he submitted a workplace violence report to the Town;

- On September 15, 2017, Plaintiff was threatened by occupants in an apartment while conducting an inspection in Bethpage; and

- On October 2, 2017, Plaintiff witnessed a workplace violence incident and consequently made a statement to a Town investigator.

(*Id*. ¶¶ 22-28.)

Plaintiff also reported safety issues, such as, *inter alia,* vehicle breakdowns and lack of radio back up, he experienced, but he did not receive a response. (*Id*. ¶¶ 29, 31.) He also reported lack of safety gear and personal protective equipment because only some Code Enforcement Officers received protective equipment, with the exception of Plaintiff. (*Id*. ¶ 30.)

In September 2017, Plaintiff was denied overtime that he requested for one hour of overtime. (*Id*. ¶ 32.) He subsequently filed a grievance with his union for violating the overtime terms in his Collective Bargaining Agreement and the Grievance Board issued its decision on December 2017. (*Id*. ¶ 33.)

Plaintiff also alleges he suffered from other adverse employment actions or acts of harassment while working for the Town, namely:

- He was denied free training (*Id*. ¶ 35);

- He never received a response to his request to transfer out of the Town's Building Department (*Id*. ¶ 36);

- He was denied the opportunity to attend classes relevant to his job title (*Id*. ¶ 37);

- He was written up for speaking disrespectfully to the former Acting Supervisor CEO after the-then CEO spoke to Plaintiff in a threatening way (*Id*. ¶ 38);

- He was questioned about his bathroom breaks in December 2018 by Nassau County Detective Gunther because Gunther was told that Plaintiff was engaging in personal things on company time (*Id*. ¶¶ 39-40); and

3

- He was required to use his vacation and personal days to attend trainings relevant to his job title, but other employees were not required to use their days.  (*Id*. ¶ 41.)

And that's not all.  The retaliatory treatment did not end at the workplace according to Plaintiff.  With regard to Plaintiff's residence, in November 2018, a Town plumbing inspector trespassed onto his property to conduct an inspection without his permission and entered notes about his visit on December 5, 2018—a violation of the Town policy since notes must be entered while on the property.  (*Id*. ¶ 43.)  Plaintiff then filed a complaint against the inspector for trespass and inspecting without permission.  (*Id*. ¶ 44.)

Later in November 2018, Plaintiff was issued a "Stop Work Order" and two criminal appearance tickets.  (*Id*. ¶ 45.)  He received eleven (11) days of suspension in total for a variety of reasons, including for removing the "Stop Work Order" from his door and for using the Town computer for personal access.  (*Id*. ¶¶ 48-49.)  Because of the Stop Work Order, Plaintiff could not make repairs on his home which left him and "his family without hot water for seven (7) days." (*Id*. ¶ 50.)

Finally, Plaintiff discovered that the Town's personnel clerk who processes and administers FMLA paperwork had been disclosing his medical information to other employees.  (*Id*. ¶ 51.)  He filed a complaint with the Town and with the Office of Civil Rights ("OCR") concerning the release of this information.  (*Id*. ¶¶ 53-54.)

## PROCEDURAL BACKGROUND

Plaintiff commenced this action by the filing of the Complaint on July 13, 2022.  (ECF No. 1 at 2.)  On September 28, 2023, the Court held an initial conference and entered a discovery schedule.  (ECF Nos. 11 and 12.)  The last date to amend the pleadings was October 13, 2022.  (ECF No. 12.)  On September 7, 2022, Defendants filed a pre-motion conference letter regarding their anticipated motion to dismiss.  (ECF No. 7.)  Plaintiff did not oppose this request.  (ECF No. 10.)  Judge Azrack subsequently ordered the parties to propose a briefing schedule, which was submitted (ECF No. 13) and adopted.  (*See* Electronic Order dated Nov. 1, 2022.)  In a similar fashion, on January 10, 2023, Plaintiff filed a pre-motion conference letter for his anticipated cross-motion to file an amended complaint and a proposed briefing schedule, which was subsequently adopted.  (ECF Nos. 14 and 17; Electronic Order dated Feb. 23, 2023.)  After requested extensions, Judge Azrack directed the parties to bundle file both motions by May 10, 2023 which they did.  (ECF Nos. 21 and 22.)

In their motion to dismiss, Defendants seek dismissal of the entire complaint on multiple grounds: Plaintiff's FLSA retaliation claim should be dismissed because (a) it is barred by the statute of limitations; (b) Plaintiff fails to state a cause of action; and (c) it is "*de minimis*;" and that Plaintiff's remaining claims for FMLA retaliation,  § 1983, and FMLA interference are all time-barred and fail to state a cause of action.  (ECF No. 21-9.)  Defendants also claim they are entitled to attorney's fees under 42 U.S.C. § 1988.

In his motion to amend and in opposition to Defendants' motion to dismiss, Plaintiff argues it should be granted leave to file the amended complaint because the proposed complaint demonstrates a pattern and custom to deprive Plaintiff of his constitutional rights; the proposed

complaint sufficiently alleges liability against the Town and the individual Defendants; and the claims are not time barred.  (ECF No. 22-3.)

In their opposition to Plaintiff's motion for leave to file an amended complaint, Defendants assert (1) the proposed claims would be futile; and (2) the claims, including the newly proposed false arrest claim, are also time-barred under § 1983.  (ECF No. 21-6.)

Plaintiff, in turn, responds that (1) the claims are indeed timely and not time barred since the statute of limitations, relying on tolling of the statute of limitations since Defendants' conduct constitutes a continued violation; and (2) the claims under § 1983 are sufficiently pled to make out a cause of action.  (ECF No. 21-7.)

## DISCUSSION

### I.    Motion to Dismiss

For all of Plaintiff's claims in the operative complaint – the FLSA retaliation, the FMLA Retaliation, the § 1983, and the FMLA interference claims – Defendants claim that they are time barred and, in any event, Plaintiff fails to state a cause of action.  Plaintiff's opposition states only that operative Complaint the FMLA claim is not barred by the statute of limitations (*see* ECF No. 22-3 at 10). [1]

### a.    Legal Framework

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] In its opposition to Defendants' motion to dismiss, Plaintiff states that "for the purpose of judicial expediency" he has withdrawn the FLSA claim.  (ECF No. 22-3 at 10 n.1.)  Therefore, the Court deems this claim withdrawn and does not address Defendants' arguments advanced in their motion.

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

"[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A claim has facial plausibility when the plaintiff pleads sufficient facts allowing the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–57 (internal citations omitted)).

When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. *See id.*; *see also Rozz v. Town of Hempstead*, No. 20-CV-1812 (JMA) (AYS), 2023 U.S. Dist. LEXIS 56996, at *9-10 (E.D.N.Y. Mar. 31, 2023) (citing *Iqbal* and *Twombly* as the standard cases for deciding a motion to dismiss); *Solomon v. Flipps Media, Inc.*, No. 22-cv-5508 (JMA) (JMW), 2023 U.S. Dist. LEXIS 176480, at *3-4 (E.D.N.Y Sept. 30, 2023) (same).

### b.  Section 1983 Claim Against All Defendants

#### i.  Statute of Limitations

Before addressing the merits of the claims, the undersigned must first consider whether Plaintiff's § 1983 claim is barred by the applicable statute of limitations.

It is well settled that "[t]he statute of limitations for § 1983 actions arising in New York is three years." *Lucente v. County of Suffolk*, 980 F.3d 284, 308 (2d Cir. 2020).  Plaintiff commenced this action on July 13, 2022 asserting claims based upon conduct occurring as early as January 2017 and as late as January 2019.  (ECF No. 1 at 8-11.)  The alleged denial of training and transfer occurred in 2018; the subjection to menial tasks occurred in 2017; the questioning of bathroom breaks occurred in 2018; and the suspensions occurred in January 2019.  (*See generally id; see also* ECF No. 21-6 at 6-7.)  Thus, given that the Complaint was filed in July 2022, Plaintiff's claims would not survive, as they are well past the three-year statute of limitations period.  *See Bell v. Morgan*, Nos. 11-CV-0534 (KAM) (ALC), 11-CV-5356 (KAM) (ALC), 11-CV-5431 (KAM) (ALC), 2011 U.S. Dist. LEXIS 138118, at *5 (E.D.N.Y. Nov. 28, 2011) (directing plaintiff to show cause why the action should not be dismissed because the events in the complaints occurred more than three years ago after the statute of limitations period had already expired); *Jones v. Bellevue Hosp. Ctr.*, No. 04-cv-5552 (WHP), 2005 U.S. Dist. LEXIS 28662, at *13 (S.D.N.Y. Nov. 7, 2005) (dismissing plaintiff's FMLA, Human Rights Law, whistleblower and  § 1983 claims because plaintiff had not alleged any injuries occurring three years prior to his filing the action).

Plaintiff also attempts to state that the harms have continued to the present date by stating the following in a single line: "[the] discriminatory activity continues to date and as such constitutes an on-going retaliation against the Plaintiff for which the Plaintiff has had no legal

recourse." (ECF No. 1 ¶ 20.)  However, such a conclusory statement is insufficient to claim that the statute of limitations does not apply.  *See Perkins v. Rome Mem. Hosp.*, No. 20-CV-0196 (NAM) (ATB), 2020 U.S. Dist. LEXIS 206930, at *9 (N.D.N.Y. Nov. 5, 2020) (finding that plaintiff alleged in a conclusory fashion that the statute of limitations was extended but failed to state any specific dates or interactions with defendants after his surgery occurred over ten years ago).  Thus, Plaintiff's retaliation claim under § 1983 against all Defendants is barred by the statute of limitations.

### ii.  Failure to State a Claim

In the event that the District Judge concludes that the limitations period for the § 1983 claims has not expired, the undersigned next analyzes whether Plaintiff has, in any event, sufficiently pled a § 1983 claim.

Plaintiff states that all of the Defendants' conduct was "aimed [to] purposefully depriv[e] [him] of his ability to perform his job functions with constant disciplinary actions" resulting in a "pattern of discriminatory activity." (ECF No. 1 ¶ 20.)  He also outlines incidents involving the individual Defendants pertaining to his report of workplace safety issues and various adverse employment actions taken against him and his family.  (*Id.* ¶¶ 29, 31, 35, 37, 39, 41, 45, 46, 49.)

Defendants argue that Plaintiff has failed to plead any element sufficient to demonstrate a claim under § 1983.  Further, they contend he only states alleged violations under the FMLA, a statute, and does not make any allegations that Defendants violated a specific constitutional right.  (ECF No. 1 ¶ 20) ("The Defendants' conduct is wanton, malicious and aimed with purposefully depriving the Plaintiff of his ability to perform his job functions with constant disciplinary actions being maintained against hi[m] with hopes that the Plaintiff would relinquish

his duties and functions as a Compliance Officer which pattern of discriminatory activity continues to date….).

The federal vessel for Plaintiff's claims is § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

"[S]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Schuloff v. Queens Coll. Found., Inc.*, 165 F.3d 183, 184 (2d Cir. 1999) (internal quotation marks omitted). A plaintiff asserting a § 1983 claim must establish that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

At the outset, Plaintiff cannot rely upon § 1983 to allege violations of the FMLA. This concept was outlined in *Sutter v. Dibello*, where the Plaintiff based her § 1983 claims on FMLA violations. *See Sutter v. Dibello*, No. 18-CV-817 (SJF) (AKT), 2021 U.S. Dist. LEXIS 46312, at *42-43 (E.D.N.Y. Mar. 10, 2021). There, the court refused to enforce FMLA violations through § 1983 since the FMLA "provides a comprehensive remedial framework" of its own. *Id.* at *43. Thus, the *Sutter* court found that because the FMLA statute provided a form of redress, "Congress did not intend to leave open a more expansive remedy under § 1983" and the "FMLA supplants, rather than supplements" § 1983's remedial scheme. *Id.* at *43-44. Here, Plaintiff cannot simply use facts from his FMLA claim to succeed on his § 1983 claim and must therefore *separately* claim a violation of a constitutional right to prevail under § 1983. *See Gadsden v.*

*New York City Sch. Constr. Auth.,* No. 17-CV-5829 (PKC)(SJB), 2018 U.S. Dist. LEXIS 65447, at *10 (Apr. 18, 2018) (dismissing plaintiff's § 1983 claim because she did "not allege a constitutional violation").

Plaintiff alleges violations of § 1983 against *both* the Town and the individual Defendants.  To state a claim against a municipality, here, the Town, Plaintiff must adduce certain evidence to prevail on his § 1983 claim: "[A] municipality, such as the County, can only be liable under section 1983 if an action taken pursuant to official municipal policy caused the alleged deprivation of plaintiff's rights." *Molina v. New York*, No. 21-CV-3144 (RPK) (JMW), 2023 U.S. Dist. LEXIS 8961, at *19 (E.D.N.Y. Jan. 17, 2023). And, "[a]bsent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Hall v. New York City Dep't of Corr.*, No. 22-CV-5738 (AMD) (MMH), 2022 WL 17811474, at *2 (E.D.N.Y. Dec. 19, 2022) (quoting *Halperin v. New York City Dep't of Correction*, No. 19-CV-6266, 2019 WL 6328775, at *2 (E.D.N.Y. Nov. 26, 2019) (dismissing § 1983 claim against DOC and declining to substitute the City of New York as a defendant where the plaintiff did not allege any unconstitutional policy or custom attributable to the City of New York)).

To hold a municipality liable under *Monell v. Dep't of Soc. Servs.*, a plaintiff may establish a policy or custom in one of four ways: "by alleging the existence of (1) a formal policy; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policymakers; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those whom municipal employees will come into contact." *Aquino v. City of New York*,

No. 16-cv-1577 (GHW), 2017 WL 384354, at *3 (S.D.N.Y. Jan. 25, 2017); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (granting defendants' motion to dismiss because a municipality can only be held liable if a plaintiff was deprived of his rights pursuant to an official policy).

As the operative complaint stands, Plaintiff fails to set out any pattern constituting a violation of his § 1983 rights as against the Town.  Instead, he states in a conclusory fashion "that the conduct of the Defendants as complained herein constitutes a pattern of illegal and discriminatory actions aimed at harming the Plaintiff and his family solely in response to the Plaintiff's conduct as a Compliance Officer with the TOH."  (ECF No. 1 ¶ 19.); *see Muniz v. Orange Cnty.*, No. 22-CV-529 (NSR), 2023 U.S. Dist. LEXIS 52147, at *9 (S.D.N.Y. Mar. 27, 2023) (finding that plaintiff failed to "make even one allegation concerning a municipal policy or custom"); *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 U.S. Dist. LEXIS 38703, at *41 (S.D.N.Y. Mar. 26, 2015) (finding plaintiff's threadbare allegations that the city had a policy or practice of using excessive force and that it had a custom of inadequately training or otherwise supervising personnel which resulted in violations of her constitutional rights was insufficient under *Monell*); *Jones v. City of Mount Vernon*, No. 22-cv-414 (NSR), 2023 U.S. Dist. LEXIS 27526, at *21 (S.D.N.Y. Feb17, 2023) (stating that plaintiff's "boilerplate" allegations that the department's and city's policies and practices were the "driving force" behind the constitutional violation was insufficient to prove causation).

To state a claim against an individual defendant in a § 1983 action, a plaintiff must demonstrate personal involvement, specifically "direct participation or failure to remedy the wrong after learning of it or creation of a policy or custom under which unconstitutional

practices occurred." *Howe v. Town of Hempstead,* No. 04-cv-0656 (DRH) (ETB), 2006 U.S. Dist. LEXIS 78927, at *36-37 (E.D.N.Y. Oct. 30, 2006).

*First,* as it relates to Rottkamp, Plaintiff alleges that he was the Commissioner of the Building Department and is Plaintiff's highest-level supervisor and "has the power to make binding decisions for the [Town]." (*Id.* ¶ 8.) He further states that Rottkamp denied his request for overtime of one hour (*id.* ¶ 32) and that Rottkamp refused to speak with Plaintiff about the inspector's trespass into his home (*Id.* ¶ 46).

*Second*, Novello is a Deputy Commissioner of the Building Department, was and is Plaintiff's supervisor and has the power to make decisions for the Town. (*Id.* ¶ 9.) Plaintiff claims that Novello denied him of free training and allowed more junior employees to attend classes unrelated to their jobs (*id.* ¶ 37); allegedly told Gunther to gather information about Plaintiff's breaks so he could prove that Plaintiff was doing personal work on company time (*id.* ¶ 40); has had to use vacation or personal days to attend trainings relative to his job but other employees did not have to (*id.* ¶ 41); suspended Plaintiff for 11 days in total (*id.* ¶ 49)

*Third,* Schwarz is a Supervisor of Inspection Services and is Plaintiff's supervisor who has the power to make binding decisions for the Town. (*Id.* ¶ 10.) Plaintiff said he notified Schwarz of safety issues in August and September of 2017 (*id.* ¶¶ 29, 31). .

*Finally,* Gunther is Chief Code Enforcement Officer and was and is Plaintiff's direct supervisor. (*Id.* ¶ 11.) He accuses Gunther of receiving his unsafe work notices (*id.* ¶¶ 29, 31); questioning his bathroom breaks regularly in December 2018 at Novello's direction (*id.* ¶¶ 39-40); and requiring Plaintiff to use his vacation and personal days to attend trainings. (*Id.* ¶ 41.) Further, Gunther told Plaintiff that he needed a letter by a licensed plumber that his heater did not work and could only make subsequent repairs unless he applied for a permit. (*Id.* ¶ 50.)

However, because of the Stop Work Order on Plaintiff's residence he was not allowed to have his heater repaired and went without hot water for 7 days.  (*Id*.)

Plaintiff has not described even a scintilla of detail how *any* of the individual Defendants Rottkamp, Novello, Schwarz, or Gunther effectuated a pattern in violation of § 1983 or were otherwise personally involved in retaliating against him. Instead, Plaintiff only describes these Defendants' conduct, without demonstrating or connecting it to an unconstitutional policy, pattern, or custom.  Plaintiff's assertions are insufficient to constitute a claim under § 1983.  *See Moore v. City of New York,* No. 15-CV-6600 (GBD) (JLC), 2017 U.S. Dist. LEXIS 379, at *52 (S.D.N.Y. Jan. 3, 2017) ("Moore does not allege any facts to support a claim that the Individual Defendants' personnel decisions and conduct towards him constituted a persistent or widespread municipal policy or custom with the force of law that enabled the discrimination against him."); *Howe,* 2006 U.S. Dist. LEXIS 78927 at *37 (granting summary judgment of individual defendants since there was "no evidence of personnel involvement); *Williams v. Smith*, No. 85-2158, 781 F.2d 319, 323 (2d Cir. 1986) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award under § 1983."); *Johnson v. Erie Cnty. City Ct.,* No. 22-CV-563 (JLS), 2023 U.S. Dist. LEXIS 76573, at *5 (W.D.N.Y. May 2, 2023) (dismissing plaintiff's claims against the individual defendants because he failed to plead non-conclusory allegations to support his claims that they were involved in depriving him of his constitutional rights); *Milner v. City of Bristol*, No. 18-cv-1104 (JAM), 2019 U.S. Dist. LEXIS 141825, at *7 (D. Conn. Aug. 21, 2019) (dismissing plaintiff's complaint against the individual defendants for failure to establish personal involvement in violation of his constitutional rights).

Accordingly, to the extent the District Judge declines to dismiss based upon statute of limitations, then the undersigned recommends that the § 1983 claim be dismissed because

Plaintiff has not alleged a constitutional violation against the Town or any of the individual Defendants.

### c.  FMLA Claims

Plaintiff claims that he has suffered from retaliatory treatment as a result of his FMLA leave and has been injured from the disclosure of his wife's medical information. (ECF No. 1.)  The undersigned first analyzes whether his FMLA claims are barred under the applicable statute of limitations and next whether each of these claims has any merit.

### i.  Statute of Limitations

"FMLA claims are subject to a two-year statute of limitations, and this time limit is extended to three years if the FMLA violations are 'willful.'"  *Tsekhanskaya v. City of N.Y.,* No. 18-CV-7273 (KAM) (LB), 2020 U.S. Dist. LEXIS 179477, at *21 (E.D.N.Y. Sept. 29, 2020) (citing *Offor v. Mercy Med. Ctr.,* 676 F. App'x 51, 53 (2d Cir. 2017)).  The statutes of limitation begin to run "from the date of the last event constituting the alleged violation."  *Marsh-Godreau,* No. 15-cv-0437 (LEK/CFH), 2016 U.S. Dist. LEXIS 31449, at *26 (N.D.N.Y. Mar. 11, 2016).

Like Plaintiff's § 1983 claim, his claims under the FMLA are also time-barred.  The last incident falling under his FMLA retaliation claim occurred in January 2019—namely when he was suspended from work and could not make repairs from to his home.  (ECF No. 1 ¶¶ 47-50.) Plaintiff's wife's medical information was disclosed in 2018.  The action was then commenced more than three years later in July 2022.  Thus, Plaintiff's FMLA claims are defeated by the three-year statute of limitations. However, even if the District Judge finds that the FMLA claims are timely, they nevertheless fail to state a claim for the reasons that follow.

### ii. Failure to State an FMLA Retaliation Claim Against All Defendants

Plaintiff claims that Defendants have engaged in a series of retaliatory acts as a result of his taking FMLA leave. (ECF No. 1.) He states that he has "taken several leaves between October 2017 and the filing of this Complaint." (*Id*. ¶ 71.) After going out on leave, he was disadvantaged because he was:

> denied trainings, denied a transfer, directed to perform menial tasks outside the scope of his employment as a Code Enforcement Officer, was repeatedly questioned by his supervisor about taking bathroom breaks while at work, and was disciplined for actions for which he had not previously been disciplined or should not have been disciplined.

(*Id.* ¶¶ 73-75.)

Plaintiff claims that Defendants also had co-workers trespass onto his property, conduct an inspection and issue "criminal violations, tickets, and a Stop Work Order;" and he was given an 11-day suspension after removal of the Order from his door. (*Id.*)

Courts have found that "[a] plaintiff alleging retaliation under the FMLA 'must establish that . . . he was qualified for his position' and that he 'suffered an adverse employment action . . . under circumstances giving rise to an inference of retaliatory intent.'" *Pena-Barrero v. City of New York*, 726 Fed. App'x. 31, 35 (2d Cir. 2018) (citing *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)). There must be some "causal connection between the protected activity [taken by the plaintiff] and the adverse employment action." *Id*. The Second Circuit has held that a plaintiff's burden for establishing a *prima facie* case for retaliation is *de minimis*. *Separ v. Cty. of Nassau,* No. 21-CV-00010 (DRH) (JMW), 2022 U.S. Dist. LEXIS 17394, at *20 (E.D.N.Y. Jan. 28, 2022).

"'Protected activity' consists of filing a formal or informal complaint, including an EEOC charge, challenging discriminatory conduct." *Separ,* 2022 U.S. Dist. LEXIS 17394 at *20. However, a claimant's requests for accommodations alone are insufficient to constitute a

16

protected activity.  *Pace v. Town & Country Veterinary Clinic P.C.*, No. 20-cv-279 (GLS) (ML), 2022 U.S. Dist. LEXIS 135779, at *10 (N.D.N.Y. Aug. 1, 2022) (noting that plaintiff's request for pregnancy accommodations alone did not constitute a protected activity but emails complaining about her feelings of discrimination did).  An "adverse employment action" is defined as "any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923 (KMK), 2022 U.S. Dist. LEXIS 51428, at *29-30 (S.D.N.Y. Mar. 22, 2022).

Courts in this Circuit tend to look at the temporal proximity or other connections between the protected activity, here the FMLA leave, and the alleged acts of discrimination or retaliation. *See Fukelman v. Delta Air Lines*, No. 18-CV-2 (PKC) (PK), 2020 U.S. Dist. LEXIS 66410, at *58 (E.D.N.Y. Apr. 13, 2020).  That is, the closer in time and more evident the connection is between the leave taken and the alleged suspension or termination, the more a court is likely to find that plaintiff pled a credible FMLA retaliation claim.

Once these elements are shown, "the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse action."  *Greenberg v. State Univ. Hospital-Downstate Med. Ctr.*, No. 15-CV-2343 (PKC) (VMS), 2019 U.S. Dist. LEXIS 167956, at *57 (E.D.N.Y. Sept. 29, 2019).

It is undisputed that taking leave under the FMLA is a "protected activity" under the FMLA.  *See Corrado v. New York Unified Court Sys.*, 163 F. Supp. 3d 1, 25 (E.D.N.Y. 2016). The next inquiry though, is what creates the hurdle in Plaintiff's FMLA claim, namely, whether any adverse employment action was taken.

An adverse employment action is one that results in a materially adverse change in the plaintiff's employment terms and conditions.  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir.

2008). Examples of such changes include terminations, demotions, and loss of benefits. *Id*. Therefore, "petty slights, minor annoyances, and a simple lack of good manners will not give rise to actionable retaliation claims." *Colon-Regus v. FEGS Health & Human Servs*., No. 12-cv-2223 (AT) (KNF), 2015 U.S. Dist. LEXIS 32027, at *27-29 (S.D.N.Y. Mar. 11, 2015) (finding that plaintiff failed to state an FMLA retaliation claim where she alleged, *inter alia*, that defendant "employed deliberate mental pressures and tactics of intimidation," questioned her heavily, "inundated [her] with work to complete within an unreasonable time period").

Here, Plaintiff's allegations that he was disciplined for various actions, questioned about his bathroom breaks, and denied trainings and transfers constitute the "petty slights" that would not rise to the level of retaliation under the FMLA. The actions taken here are similar to those taken in *Kirkland-Hudson v. Mount Vernon City Sch*. *Dist*. No. 21-CV-695 (KMK), 2023 U.S. Dist. LEXIS 54339 (S.D.N.Y. Mar. 29, 2023). There, plaintiff alleged that defendants retaliated against her on the basis of her race and disability in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, New York State's Human Rights Law, and the FMLA. *Id.* at *1-2. She claimed that she was often scrutinized and reprimanded by her employer and received disciplinary letters. *Id.* at *52. The *Kirkland-Hudson* court stated that defendants' conduct, standing alone, was insufficient to establish an adverse employment action since she had not shown a change in the terms and conditions of her employment. *Id.* at *53. Like the plaintiff in *Kirkland-Hudson*, Plaintiff here has not established that the reprimands, including the suspension, amount to an adverse employment action; rather, Defendants' conduct indicates Plaintiff was *rightfully* disciplined for actions such as accessing information regarding his personal residence using a Town computer. (ECF No. 1 ¶ 48.)

18

Similar findings regarding adverse employment actions were made in *Zoulas v. N.Y. City Dep't of Educ*., 400 F. Supp. 3d 25, 55 (S.D.N.Y. Aug. 29, 2019).  There, the court found that "negative observation reports, feedback, and inferior teacher ratings" did not constitute adverse employment actions.  *Id.* at 53.  Zoulas was unable to show that defendant's actions caused her any material changes in the terms and conditions of her employment.  *Id.* at 54.  Of relevance to the instant case, the *Zoulas* court also found that plaintiff's allegation that she was denied professional development opportunities did not rise to the level of an adverse employment action unless such denial led to "material harm" like a failure to promote or loss of further opportunities.  *Id.* at 56.  Plaintiff here merely states in a single line that he "was and continues to be treated differently and more harshly than his co-workers" but has not outlined whether any of Defendants' actions, including the denial of certain trainings, resulted in subsequent harms to his career.  (ECF No. 1 ¶ 76.)  Consequently, the incidents that Plaintiff experienced, though unfortunate, do not amount to an adverse employment action.

Also fatal to this claim is Plaintiff's inability to demonstrate a causal connection between his leave and the actions taken by Defendant.  Indeed, Defendants' actions are wholly unrelated to the leave he took at different times.  *Cf. Williams v. City of New York*, No. 20-CV-8622 (JPO), No. 20-CV-8622 (JPO), 2022 U.S. Dist. LEXIS 60835, at *5-6 (S.D.N.Y. Mar. 31, 2022) (finding that plaintiff alleged a valid FMLA claim where she took paid FMLA leave after contracting the coronavirus and defendants targeted her and other employees who called out sick with the virus, threatened her with demotion and less desirable assignments because of her sickness and passed over her for awards which were "created to reward those who did not exercise their FMLA rights").  In fact, Plaintiff claims that his alleged derogatory treatment is because he voiced concerns with the Town's Building Department over the nature of

investigations he performed while he was a Compliance Officer.  (ECF No. 1 ¶¶ 76-77.)  Thus, Plaintiff has failed to demonstrate that at least part of the reason he received such treatment was *as a result of* his going out on FMLA leave.  *See Crawford v. Bronx Cmty. Coll.*, No. 22-cv-1062 (PGG) (SLC), 2023 U.S. Dist. LEXIS 125644, at *39 (S.D.N.Y. July 19, 2023) ("The Second Circuit has held that an employer violates the FMLA when it considers an employee's use of FMLA leave as a negative factor in its decision to terminate.").

For these reasons, his FMLA retaliation claim fails and should be dismissed.

### iii.  Failure to State an FMLA Interference Claim Against the Town

Plaintiff claims that Joan Schwarz, the Town's personnel clerk responsible for overseeing FMLA paperwork, had told her husband Defendant Schwarz about his wife's health condition. (ECF No. 1 ¶ 51-52.)  Schwarz allegedly told other Town employees about Plaintiff's wife's condition.  (*Id.* ¶ 82.)  Plaintiff states that the Town violated his right to keep medical information private and interfered with his FMLA rights when Defendant Schwarz's wife disclosed information about his wife's medical condition.  (*Id*. ¶¶ 81, 83.)  Defendants allege that this claim is time barred and again insufficiently pleads a claim. (ECF No. 22-1 at 12-13.)

Under the FMLA, employers may not "interfere[] with, restrain[], or den[y] the exercise or attempted exercise of rights or benefits under the FMLA."  *Holtrey v. Collier County Bd. of County Comm'rs*, No. 16-cv-00034 (SPC) (CM), 2017 U.S. Dist. LEXIS 4654, at *4 (M.D. Fla. Jan. 12, 2017).  Among the rights provided to plaintiffs pursuant to the FMLA, the FMLA also states that "[r]ecords and documents relating to … medical histories of employees or employees' family members…shall be maintained as confidential medical records in separate files/records from the usual personnel files."  *Id*. (citing 29 C.F.R. § 825.500(g)).  Cases in this Circuit have found that this provision offers individuals a private right of action.  *See Mahran v. Benderson*

*Dev. Co., LLC*, No. 10-CV-715A, 2011 U.S. Dist. LEXIS 41599, at *11-12 (W.D.N.Y. Apr. 18, 2011) (finding that the "FMLA permits private civil actions to enforce its provisions"); *Gardin v. Delta Aire Lines, Inc.*, No. 18-CV-2199 (MKB), 2021 U.S. Dist. LEXIS 96865, at *30 (E.D.N.Y. Mar. 31, 2021) (noting that the FMLA "creates a private right of action to seek both equitable relief and monetary damages against any employer").

In *Mahran*, plaintiff alleged that defendant intentionally disclosed medical information to other co-workers, resulting in plaintiff's mental and emotional harm. 2011 U.S. Dist. LEXIS 41599 at *12. Mahran's circumstances were sufficient to trigger the three-year willful statute of limitations period. *Id*. Because Mahran filed his claim within the correct timeframe, the court denied defendant's motion to dismiss regarding the FMLA claim. *Id*.

Here, Plaintiff claims that the Joan Schwarz intentionally disclosed private information to her husband, thereby violating the basic tenets of the FMLA. However, unlike *Mahran*, Plaintiff failed to file his claim within the statute of limitations, as discussed above. Thus, even if the merits of his claim would have been sustained, his Plaintiff's FMLA interference claim is well beyond the expiration period and should be dismissed.

For the reasons described, the undersigned recommends denying Plaintiff's FMLA interference claim.

## II.    Motion to Amend

Plaintiff seeks to amend and make the following changes to the complaint:

| Operative Complaint (ECF No. 1) | Proposed Amended Complaint (ECF No. 21-3) |
|---|---|
| Count I: FLSA Retaliation | Count I: Retaliation in violation of the FMLA and § 1983 and FMLA Interference based on the Town's release of Plaintiff's protected medical information |
| Count II: FMLA Retaliation | Count II: Defendants' continuing violation of Plaintiff's § 1983 rights |
| Count III: FMLA Interference | Count III: Defendants' violated Plaintiff's § 1983 rights by falsely having him arrested and charged with criminal violations of the Town's Building Code |

Defendants oppose arguing solely that the claims in the proposed amended complaint are futile[2] based on Plaintiff's failure to state a claim under Fed. R. Civ. P. 12(b)(6), including that the claims are time barred under the applicable statutes of limitation.

### a. Legal Standard

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), which provides that "[t]he court shall freely give leave when justice so requires." Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Communs Co. v. Best Yet Mkt., Inc.*, No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted). The moving party must attach the proposed amended complaint to the motion, as was done here,

---

[2] In other words, Defendants do not argue that bringing these new claims was delayed, filed in bad faith, or would be unduly prejudicial. *See* Fed. R. Civ. P. 15. Futility is the only ground advanced to defeat the motion to amend.

specifying the new claims and/or the parties intended to be added.  *See Nabatkhorian v. County of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

Futility is measured under the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Hallquist v. Chautauqua County,* No. 04-CV-827A, 2005 U.S. Dist. LEXIS 38181, at *3-4 (W.D.N.Y. Dec. 22, 2005).  Thus, like a motion to dismiss, for a motion to amend, the Court must accept plaintiff's allegations as true and draw all reasonable inferences in his favor.  *Id.*

The undersigned considers the motion to amend under this lens.

### b.  Futility of the Newly Proposed Claims

#### i.  Tolling of Statute of Limitations

Plaintiff raises for the first time in his reply[3] that the statutes of limitation with respect to the FMLA and § 1983 claims was tolled because of Governor Cuomo's executive order suspending certain limitation periods for various statutes and laws.  (ECF No. 21-7 at 5.)

Governor Cuomo's "Executive Order 202.8 toll[ed] the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which appl[ies] New York's three-year limitations period — but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself."  *See Rich v. New York*, No. 21-cv-3835 (AT), 2022 U.S. Dist. LEXIS 60779, at *9-10 (S.D.N.Y. Mar. 31, 2022); *Jones v. Assencao*, No. 20-CV-693 (DG)

---

[3] "[A] district court is free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment.  However, the Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument."  *Am. Hotel Int'l Group Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (citing *Ruggiero v. Warner-Lambert Co.*., 424 F.3d 249 (2d Cir. 2005)); *Kravitz v. Binda*, No. 17-CV-07461 (ALC) (SN), 2020 U.S. Dist. LEXIS 10893, at *13 (Jan. 21, 2020) ("A court may strike portions of reply submissions that add new material that should have been included in the opening papers, so long as the new material is not in response to an issue raised for the first time in the opposition papers.").  Notwithstanding the argument was advanced for the first time in reply papers, the undersigned uses its discretion and considers Plaintiff's argument.

(SJB), 2022 WL 4455229, at *5 (E.D.N.Y. June 28, 2022) ("Courts have uniformly held that [Executive Order 202.8's] tolling applies to federal section 1983 claims using the New York statute of limitations like this one.").

Per the Executive Order, causes of action that arose under New York law that accrued before or during the tolled period—between March 2020 and November 2020—would not count towards the statute of limitations period for that particular claim.  *See* Seth M. Kruglak, *COVID-19's Enduring Impact on Statutes of Limitations: Take Caution*, Law.Com (Oct. 3, 2023 at 12:00 PM), https://www.law.com/newyorklawjournal/2023/10/03/covid-19s-enduring-impact-on-statutes-of-limitations-take-caution/#:~:text=As%20a%20result%2C%20causes%20of,See%2C%20e.g.%2C%20Williams%20v; *see also Williams v. Ideal Food Basket*, 219 A.D.3d 917, 918 (2d Dep't 2023) (stating that Governor Cuomo's order tolled the limitations period from March 20, 2020 to Nov. 3, 2020).

The court in *Bonilla v. City of New York* found that Executive Order 202.8 does not "defeat the goals" of § 1983 but "advances the goals of deterrence and compensation by permitting Plaintiff ample time to pursue his claims during a global pandemic."  *Bonilla v. City of New York*, No. 20-cv-1704 (RJD) (LB), 2020 U.S. Dist. LEXIS 211171, at *5-6 (E.D.NY. Nov. 10, 2020).  The *Bonilla* court looked to Second Circuit case law to find that it *was* acceptable for Magistrate Judge Bloom to apply the Executive Order to § 1983 claims, which provides a state statute of limitations.  *Id.* at *6.  Thus, this tolling may apply to Plaintiff's claim of false arrest—which uses § 1983 to borrow from New York state's statute of limitations period—but would *not* apply to Plaintiff's FMLA claims.[4]  Those FMLA claims, as discussed above, are time barred.

---

[4] *See Jones v. City of New York,* 846 Fed. App'x 22, 23-24 (2d Cir. 2021); *Aguilar v. New DairyDel, N*o. 22-cv-3700 (NSR), 2023 WL 5835829, at *2 n.3 (S.D.N.Y. Sept. 8, 2023) (citing *Romero v. Manhattan*

Plaintiff claims that the Executive Orders suspended the limitations periods from March 20, 2020 to November 3, 2020.  This means that the limitations period would have been tolled for 7 months and 2 weeks, or a total of 228 days.  Plaintiff here asserts a new claim of false arrest pursuant to § 1983.  (ECF No. 21-3 at 23-24.)  He was arrested on November 30, 2018 for violations of the Town Building Code.  The statute of limitations concerning the arrest would have originally lapsed on November 30, 2021.  However, with the 228-day tolling period, the limitations period would expire around July 15, 2022, not November 30, 2021.  (ECF No. 21-7 at 8.)  This means that the claim would still be viable since the Complaint was filed on July 13, 2022—prior to the tolled statute of limitations.

Nevertheless, even if the statute of limitations for Plaintiff's false arrest claim was tolled, Plaintiff was forearmed with information about Governor Cuomo's Executive Order months before the commencement of this suit.  Specifically, Plaintiff was aware *since at least October 2020*—when the order was implemented—of Governor Cuomo's Executive Order extending the toll on the statute of limitations. Exec. Order No. 202.68, N.Y. Comp. Codes R. & Regs. tit. 9, §8.202 (2021).  Thus, raising the tolling argument on reply essentially sandbags Defendants and does nothing to move the needle considering that he had the information long before he filed this suit.  *See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc*., 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden.").  In addition, as will be explained below, although his false arrest claim may have survived the statute of limitations period, this claim should not be revived for

---

*& Bronx Surface Transit Operating Authority*, No. 21-CV-4951 (LJL), 2022 WL 624451, at *6 (S.D.N.Y. Mar. 2, 2022)).

other reasons—that is, because of Plaintiff's failure to plead a constitutional violation and the existence of probable cause.

Accordingly, the undersigned finds that Plaintiff's false arrest claim was tolled based on Governor Cuomo's Executive Order and therefore was timely brought.  However, the claim fails for other reasons, as described below.

### ii.  Application of the Continued Violation Doctrine

In Plaintiff's proposed complaint, he maintains that the Defendants' conduct constituted a continuing violation of the Plaintiff's § 1983 rights.  (ECF No. 21-3 at 22-23.)  The only viable claim that has survived the statute of limitations is Plaintiff's newly proposed false arrest claim pursuant to § 1983.  Therefore, the undersigned must next determine whether any of Defendants' alleged violations are associated with the false arrest claim, or, if they instead constitute discrete, separate actions.

Plaintiff submits that the Defendants' violations are still occurring "arguably to the present date" since Defendants allegedly engaged in a pattern of abuse and harassment to prevent Plaintiff and his family from enjoying their new home and even preventing him from taking a career in law enforcement after accruing criminal charges.  (ECF No. 22-3 at 4-5); (*see also* ECF No. 21-3 ¶¶ 69-73; ECF No. 21-7 at 12.)  Specifically, Plaintiff states that the charges against him were dismissed on January 30, 2020 which led to his current false arrest and malicious prosecution claims.  He states that it was on this date that he was aware of Defendants' actions sufficient to make out his current proposed claims.  (*Id*. at 11.)  Plaintiff claims that, as a result, the statute of limitations would thus expire on January 30, 2023.  (*Id*.)

Defendants assert that the continuing violations doctrine cannot stand here given that Plaintiff was aware of the acts making up his claims long before the charges were dismissed in

January 2020.  (ECF No. 21-6 at 9.)  Defendants point to paragraphs 55 and 65 of the proposed

amended complaint, in which Plaintiff was disciplined on October 10, 2018 and January 3, 2019.

(*See* ECF No. 21-3 ¶¶ 55, 65) (noting that Plaintiff was reprimanded for speaking disrespectfully

to a supervisor and received a 5-day suspension after removing the Stop Word Order from the

door).  Further, the 11-day suspension occurred on January 3, 2019.  (*Id*.)  However, the

suspension led to a stipulation of settlement with Defendants in July 2020 wherein, Plaintiff

agreed to release any future claims related to this suspension.  (ECF No. 21-6 at 7 n.1).  This

discriminatory act, Defendants say, is discrete and would not fall within the limitations period.

(*Id*.)  Thus Plaintiff has not alleged any discriminatory acts occurred from July 13, 2019 to July

13, 2022.

   "[T]he Second Circuit has repeatedly rejected attempts by plaintiffs to use the continuing

violation doctrine to resurrect time-barred disparate treatment claims arising from discrete acts."

*See Krul v. DeJoy*, No. 20-CV-198, 2023 U.S. Dist. LEXIS 217345, at *65 (N.D.N.Y. Dec. 6,

2023).  "To establish a continuing violation, a plaintiff must show a series of related acts, one or

more of which falls within the limitations period, or the maintenance of a discriminatory system

both before and during the [limitations] period."  *Acosta v. Yale Club*, No. 94-cv-0888 (KTD),

1995 U.S. Dist. LEXIS 14881, at *15 (S.D.N.Y. Oct. 5, 1995).  "If a continuing violation exists,

the statute of limitations will not toll until the last discriminatory act in furtherance of the

discrimination."  *Id*. at *15-16 (internal citations omitted).  "[T]he mere fact that past

discriminatory acts have a present effect on a plaintiff is insufficient."  *Id*. at *16.

   Plaintiff's continued violation claim fails for several reasons.  *First,* despite Plaintiff's

urging that the Court apply the continued violation doctrine, the incidents occurred as late as

November 2018—therefore all appropriate statutes of limitations have run for each of these

claims given that the Complaint was filed on July 13, 2022.  Notably, Plaintiff himself concedes

that the FMLA claim would be subject to dismissal standing alone because it fails to withstand

the three-year statute of limitations period.  (ECF No. 22-3 at 10) ("While arguably, standing

alone, the FMLA claim [is] subject to dismissal upon statute of limitation grounds….")

Relatedly, courts in this Circuit have consistently held that for false arrest claims the

statute of limitations begins to run when plaintiff is arraigned, not when the charges are

dismissed as Plaintiff so claims.  *See Washington v. County of Rockland*, 373 F.3d 310, 317 (2d

Cir. 2004) (rejecting plaintiffs' argument that the statute of limitations began to run until the

administrative process was completed and the charges were dismissed); *McDaniel v. City of New

York*, 585 F. Supp. 3d 503, 514 (S.D.N.Y. 2022), *report and recommendation adopted*, No. 19-

CV-11265 (AT) (RWL), 2022 WL 874769 (S.D.N.Y. Mar. 24, 2022) (finding the statute of

limitations for *pro se* plaintiff's claim for false arrest began to accrue upon the date of

arraignment).  Therefore, Plaintiff cannot use the January 2020 date—when his charges were

dismissed—to support his claim.

Plaintiff also claims that the limitations period began to run only when he had enough

information to make out his claim when his claims were dismissed.  However, he was equipped

with enough information prior to the dismissal of his charges on January 30, 2020 to at least

bring his FMLA violations claims.  (ECF No. 21-3 at 20-22) (noting that the FMLA violations

occurred in 2017).  Further the alleged retaliatory acts themselves concluded in 2018 which

would have been sufficient to bring a claim.  (*See* ECF No. 22-23 at 11.)  Thus, Plaintiff's claim

that he only recently became aware of his ability to bring a claim holds no water.

*Second,* at least one court in this Circuit has found that the complained of conduct

constitutes *discrete* acts and would not make up a continuing violation claim.  *See Hadid v. City*

*of New York*, No. 15-CV-19 (WFK) (RER), 2015 U.S. Dist. LEXIS 160357, at *25-26 (E.D.N.Y. Nov. 30, 2015) (finding that the continuing violation doctrine did "not apply to discrete acts of discrimination such as termination, failure to promote, denial of transfer, or refusal to hire").  As described above, Plaintiff asserts that he was denied training opportunities, a transfer, and disciplined for various transgressions.  These incidents, however, make up discrete acts and therefore cannot be cobbled together as Plaintiff suggests.

Relatedly, Plaintiff cannot merely tack on the other alleged conduct to his false arrest claim because "courts in this Circuit have declined to apply the continuing violation doctrine to false arrest claims."  *See Frederick v. City of New York*, No. 13-CV-897 (MKB), 2016 U.S. Dist. LEXIS 39828, at *35-36 (E.D.N.Y. Mar. 25, 2016) (collecting cases); *Hawkins v. Kramer,* No. 18-cv-474 (KAD), 2019 U.S. Dist. LEXIS 76512, at *11-13 (D. Conn. May 7, 2019) (finding that plaintiff's false arrest claim did not suggest a series of continuous acts, had discrete beginning and end dates, and plaintiff was fully aware of the alleged deprivations when they occurred).[5]  For example, in *Harrison v. New York,* 95 F. Supp. 3d 293, 327 n.13 (E.D.N.Y. 2015), the plaintiff attempted to raise the continuing violation doctrine.  However, he failed to point to an ongoing policy of discrimination and non-time barred acts in furtherance of that policy.  *Id.*  His claims only related to a singular act of false arrest, not a continuous series of events.  Thus, like the plaintiff in *Harrison*, Plaintiff here cannot identify related events to invoke the continuing violation doctrine.

---

[5] Plaintiff responds that there are several acts taken by Defendants that can be lumped into this category: September 2017—Defendants did not give Plaintiff the correct safety equipment to perform his job and only provided it in September 2020, which makes the limitations period for this § 1983 claim September 2023.  (ECF No. 21-7 at 11.)  However, this 2020 date is new information brought on reply, which the Court need not consider here.

For all of these reasons, Plaintiff's attempt to assert the continuing violation doctrine fails.

### iii.  Plaintiff's Newly Proposed § 1983 Claim

Plaintiff argues that the Town's response to Plaintiff's incident reports demonstrates a policy and/or custom of retaliation and discrimination to deprive him of his constitutional rights. (ECF No. 22-3 at 5.)  Specifically, the pattern consisted of: depriving him of safe work conditions; filing disciplinary charges against him; and criminally charging him with Town building code violations and subsequently arresting him.  (*Id*. at 6.)  He further states that there are other lawsuits, investigations, and audits that have revealed similar circumstances against the Town, further delineating this pattern of corruption and cronyism that Plaintiff experienced. (ECF No. 22-3 at 6.)

Plaintiff states that the facts surrounding his case is enough to show Defendants retaliated against him: failure to protect him and others in position when performing their job; failure to correct the issues; failure to provide him with proper FMLA leave requests during his wife's pregnancy; failure to provide him with proper training for his job; disciplining him "in a discriminatory manner" for violations that never occurred; wrongfully inspecting his home and having him wrongfully arrested; and finally improperly suspending him.  (*See* ECF No. 21-3 ¶¶ 34-73.)

Defendants oppose, stating that Plaintiff fails to state a cause of action under *Monell* to hold Defendants liable.  (ECF No. 21-6 at 5.)  Plaintiff has not, for example, alleged "specific factual statements that demonstrate the existence of a causal link between a municipal policy or custom and the constitutional violation."  (*Id*. at 13.)

The new Complaint alleges as follows:

- That beginning in January 2017, Defendants have engaged in a pattern of retaliating and discriminating against Plaintiff which continued to violate his "constitutionally mandated rights to be employed in a nondiscriminatory and nonretaliatory manner." (*Id.* ¶ 34);

- Defendants failed to address the safety concerns but instead retaliated against Plaintiff for raising such issues including his subsequent criminal charges.  (*Id.* ¶ 46);

- Defendants' violated commenced in August 2017 and up until January 30, 2020 when his charges were dismissed.  Up until the present, he has also be unable to obtain gainful employment despite his career experience.  (*Id.* ¶ 47);

- He has received "disparate treatment" in receiving benefits (or lack thereof) and working under certain conditions.  (*Id.* ¶ 48);

- There are retaliatory and discriminatory practices and policies aimed to deprive him and others similarly situated of performing their duties.  (*Id.* ¶ 49);

- That the policies and practices were "designed to deprive the Plaintiff and other similarly situated TOH CEOs of the equal protection of the law in the performance of their job duties and functions as herein previously described and alleged." (*Id.* ¶ 50); and

-  "That in addition to the Plaintiff herein, and as further proof that those actions complained herein by the Plaintiff were part of a recognized pattern and custom and practice the TOH Building Department and several of these named Defendants have been the subject of a similar actions brought by a current CEO of the TOH, Christopher Cappelli, in an action being maintained in the New York State Supreme Court, County of Nassau, under Index Number 608133/2018."[6]  (*Id.* ¶ 51).

Notwithstanding the new allegations against Defendants in the proposed Amended

Complaint detailing a series of incidents to constitute a pattern or custom (ECF No. 21-3),

Plaintiff *still* fails to allege which of his constitutional rights were violated.  *See Gadsden v. New*

*York City Sch. Constr. Auth*., No. 17-CV-5829 (PKC)(SJB), 2018 U.S. Dist. LEXIS 65447, at

---

[6] The *Capelli* complaint concerns violations of § 740 of New York's Labor Law and does not allege any constitutional violation.  Capelli's complaint came as a result of retaliation and harassment he experienced after filing a report of findings as part of an investigation he performed for his job duties as an inspector/code enforcement officer.  *See* Complaint at 1-3, 5, *Capelli v. Town of Hempstead*, No. 608133/2018 (Nassau Cty. Sup. Ct. June 19, 2018), NYSCEF 2.

*10 (Apr. 18, 2018) (dismissing plaintiff's § 1983 claim for failure allege a constitutional violation"). The only constitutional allegation that can be gleaned from Plaintiff's amended complaint is the following:

- Defendant Rottkamp violated "Plaintiff's constitutional right to enjoy his freedom of employment from retaliation in accordance with the rights afforded by the 14th Amendment of the United States Constitution and those equal protection rights similarly afforded by the New York State Constitution." (ECF No. 21-3 ¶ 31(D));

- "[T]he actions of the Defendants have deprived the Plaintiff and continue to deprive the Plaintiff of his rights under the equal protection of the laws [and] rights in the exercise of his freedom of speech for which the Defendants are liable."[7] (*Id*. ¶ 99.)

However, Plaintiff's attempt to plead an Equal Protection violation is an unsuccessful one. To make out a successful claim of an Equal Protection violation, the plaintiff must allege he was "intentionally treated differently from others similarly situated" and there was "no rational basis for the difference in treatment." *Larsen v. Berlin Bd. of Educ.*, 588 F. Supp. 3d 247, 260-61 (D. Conn. 2022). Here, Plaintiff has failed to describe whether he was treated differently (or similarly) to those who have also taken FMLA leave. From the face of the proposed complaint, he only states that he was forced to use vacation and/or personal days to attend relevant trainings "when other similarly situated employees, including Douglas Groth," were not required to do so. (ECF No. 21-3 ¶ 58.) However, there is no indication that Groth held the same position as Plaintiff nor whether Groth had ever taken FMLA leave. Nevertheless,

---

[7] To the extent that Plaintiff attempts to plead a First Amendment retaliation claim, he cannot prevail since he has not shown a causal connection between his alleged protected conduct and the adverse action as similarly demonstrated *supra* in the FMLA discussion. *See Abreu v. Lipka*, 778 Fed Appx. 28, 33 (2d Cir. 2019) (stating that for a First Amendment retaliation claim pursuant to § 1983, a plaintiff must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action") (citing *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)).

courts deny "class-of-one" theories of equal protection in the public employment context.[8]  *See Miranda v. South Country Cent. Sch. Dist.*, 461 F. Supp. 3d 17, 27 (E.D.N.Y. 2020).

Because Plaintiff fails to state a constitutional violation, his § 1983 claim in the proposed complaint fails to state a claim once again.

### iv.  Validity of Plaintiff's Newly Proposed False Arrest Claim Pursuant to § 1983

Despite the lack of a constitutional violation alleged, the undersigned next analyzes the merits of Plaintiff's underlying false arrest claim.  Plaintiff asserts that Defendants falsely arrested him in November 2018 when they charged him with criminal violations which were brought as a further attempt to retaliate against him.  (ECF No. 21-3 ¶ 103.)

"A claim for false arrest asserted pursuant to § 1983 arises under the Fourth Amendment right to be free from unreasonable seizure and is identical to a claim for false arrest under New York law."[9]  *Salim v. City of New York*, No. 15-cv-8521 (CM), 2016 U.S. Dist. LEXIS 180071, at *13 (S.D.N.Y. Dec. 22, 2016); *see Iosilevhich v. City of New York*, No. 22-CV-3714 (RPK) (LB), 2023 U.S. Dist. LEXIS 77328, at *6 (E.D.N.Y. May 3, 2023) ("To state a Section 1983 claim, plaintiff must allege a constitutional violation committed under color of state law.")  To establish a claim for false arrest, a plaintiff must allege that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.  *Ames v. City of New York*, No. 20-cv-11081, 2023 U.S. Dist. LEXIS 52151, at *9 (S.D.N.Y. Mar. 27, 2023).  The existence of probable cause to arrest is a complete defense to a claim for false arrest/false

---

[8] Class of one theories are those that "protect individuals against purely arbitrary government classifications."  *See Miranda v. South Country Cent. Sch. Dist.*, 461 F. Supp. 3d 17, 27 (E.D.N.Y. 2020).

[9] Notably, Plaintiff does not assert a false arrest claim under New York state law.

imprisonment.  *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 377 (E.D.N.Y. 2013).

"[F]raud, perjury, the suppression of evidence or other police conduct undertaken in bad faith

rebut the presumption that an arrest or indictment was supported by probable cause."  *Conklin v.

Doe*, No. 01-cv-987 (LLS), 2002 U.S. Dist. LEXIS 2311, at *9 (S.D.N.Y. Feb. 11, 2002).

Here, Plaintiff was indeed charged with criminal violations of the Town's Building Code

though the charges were dismissed in January 2020.  (ECF No. 21-3 ¶¶ 103, 105-06.)  The

probable cause to arrest and subsequently charge Plaintiff in this case is sufficient to defeat his

false arrest claim.  *See Chillemi v. Town of Southampton*, 943 F. Supp. 2d at 377.  Further,

because there was no constitutional violation alleged, namely a Fourth Amendment violation, his

claim cannot survive.  For these reasons, the undersigned recommends that the false arrest claim

should be dismissed.

### III.    Attorney's Fees Under Section 1988

Defendants' counsel claims it is entitled to attorney's fees as a prevailing defendant in a

§ 1983 case because Plaintiff's claims are "frivolous and groundless" and barred by the statute of

limitations.  (ECF No. 21-9 at 15; ECF No. 21-6 at 14-15.)  Notably, Plaintiff does not oppose

this argument.

Typically, litigants must pay for their own attorney's fees and expenses; however, certain

fee-shifting statutes award fees to the prevailing party.  *Belton v. Borg & Ide Imaging, P.C.*, 585

F. Supp. 3d 323, 328 (W.D.N.Y. 2022).  Section 1988 is just one of those statutes that provides

fee awards to successful parties when suits are brought under 42 U.S.C. § 1983.  Although a

rarity, § 1988 allows courts to award attorney's fees to prevailing defendants.  *Torcivia v. Suffolk

Cty.*, 437 F. Supp. 3d 239, 247 (E.D.N.Y. 2020).  Defendants are considered the "prevailing

party" when they secure a judgment on the merits or otherwise succeed on a significant issue in

the case, though they need not prevail on every claim.  *Id.* at 248; *Tatum v. City of New York*, No. 06-cv-4290 (PGG) (GWG), 2010 U.S. Dist. LEXIS 7748, at \*8 (S.D.N.Y. Jan. 28, 2010).

In the Second Circuit, it is not the norm to award attorney's fees to prevailing defendants because of the "potential chilling effect" on plaintiffs in § 1983 cases who wish to vindicate their rights against those who violate the federal law.  *Robinson v. Town of Kent*, No. 11-cv-2875 (ER), 2012 U.S. Dist. LEXIS 102992 at \*28-29 (S.D.N.Y. July 24, 2012) (citing *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)).  And, "it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation," which can essentially discourage all claims from being brought forward.  *Torcivia*, 437 F. Supp. 3d at 248 (citing *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978)).

District courts can award defendants attorney's fees under § 1988 if they succeed and only if they demonstrate that "plaintiff's action was frivolous, unreasonable, or without foundation."  *Torcivia*, 437 F. Supp. 3d at 248 (internal citations omitted).  "A claim is frivolous 'when it lacks an arguable basis either in law or in fact.'"  *Id.* (citing *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004)).

When deciding whether a claim is frivolous, courts look to whether plaintiffs have made a claim that lacks any legal or factual basis or continued to litigate the case after it clearly became frivolous.  *See Olivieri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir. 2004) (noting that courts may award prevailing defendants attorney's fees "only if the court finds that the plaintiff's claim was 'frivolous…or that the plaintiff continued to litigate after it clearly became so'").  At least one of the purposes of 42 U.S.C. § 1988 is to prevent plaintiffs from bringing lawsuits

without foundation. *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. at 420. "Where, as here, attorneys' fees are available by statute, a party may file a motion or attorneys' fees after prevailing in a case." *Fink v. Mohonk Pres. Inc.*, No. 20-cv-03002 (CM) (SDA), 2020 U.S. Dist. LEXIS 131601, at *8 (S.D.N.Y. July 23, 2020).

Similar circumstances to the case at bar were present in *Ellis v. Wilkinson*. *Ellis,* 81 F. Supp. 3d 229 (E.D.N.Y. 2015). There, the court denied the defendants' motion for attorney's fees under 42 U.S.C. § 1988, despite the fact that plaintiff's claims were "clearly time-barred" and his attempt to argue that the statute of limitations should be extended. *Id.* at 239-40. The court acknowledged that plaintiff's arguments were "extremely weak" but nevertheless found that plaintiff cited legal authority and raised legal theories to support an extension of the statute of limitations. *Id.* at 240. Therefore, the *Ellis* court reasoned that plaintiff's opposition was not submitted in bad faith although plaintiff was incorrect in his legal positions and there was no reason to award attorney's fees against him. *Id.*

Similar to *Ellis*, all of Plaintiff's claims, except the false arrest claim, are barred by the statute of limitations. Further, it is evident that the alleged claims fail because there is no constitutional violation as required to make a § 1983 claim. However, notwithstanding this, the Court denies Defendants' request to award attorney's fees. Plaintiff has attempted to correct at least some of the deficiencies in the original Complaint by adding more factual details about the Individual Defendants to support his § 1983 allegations. And, at least one of Plaintiff's claims, namely his FMLA interference claim, would have likely been a valid claim had the statute of limitations not run. Though Plaintiff did not succeed, the circumstances presented simply do not warrant the draconian outcome to award fees against him. *See West Assocs. LLC v. East Hampton*, No. 13-CV-3053 (LDW) (AKT), 2014 U.S. Dist. LEXIS 81611, at *8 (E.D.N.Y. June

10, 2014) (denying defendant's request for attorney's fees pursuant to § 1988 although the action was barred by the applicable limitations period).

Thus, the undersigned respectfully recommends that the application for attorney's fees be denied.[10]

## CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court deny Plaintiff's Motion to Amend (ECF No. 21), grant Defendants' Motion to Dismiss (ECF No. 22), and deny Defendants' request for attorney's fees.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604

---

[10] The instant case also differs from other cases in this Circuit, where courts have awarded attorney's fees in cases where Plaintiff continued to litigate the matter even after obtaining an unfavorable outcome.  *See Langdon v. County of Columbia*, No. 13-CV-842, 2013 U.S. Dist. LEXIS 131595, at *6 (N.D.N.Y. Sept. 16, 2013) (awarding fees where plaintiff attempted to litigate the same issues resulting in a "burdensome litigation without no proper basis"); *see also Jaeger v. Cellco P'ship*, No. 11-cv-1948 (SRU), 2015 U.S. Dist. LEXIS 53945, at *6 (D. Conn. Apr. 23, 2015) (awarding fees where plaintiff sought to challenge the legality of a prior decision that had already been upheld).  This is not the case here, where Plaintiff filed only one complaint at the inception of the case and filed the instant motion to amend months later.  For these reasons, the undersigned declines to award attorney's fees to Defendants.

(2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any

further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan &*

*Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York.
        February 23, 2024

                                    **RESPECTFULLY RECOMMENDED**,


                                    /S/   *James M. Wicks*
                                          JAMES M. WICKS
                                    United States Magistrate Judge